UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RAY HERRINGTON                                                          PLAINTIFF

vs.                                          CIVIL ACTION NO: 3:10-cv-661-CWR-LRA

DANIEL BUFORD, ROYAL FREIGHT, LP
and JOHN DOES 1-5                                                       DEFENDANTS

### ORDER DENYING MOTION TO SET-ASIDE DEFAULT JUDGMENT

Once again, this Court is tasked with deciding the fate of a party who failed to timely move

earth in an action filed against it until after its adversary moved for an entry of default, the clerk

granted the same, and in this case, the Court had already granted Default Judgment on liability.

[Docket No. 13].  The above-styled cause is before the Court on Royal Freight, LP,'s Second-

Amended Motion to Set Aside Entry of Default and Default Judgment [Docket No. 21].

### BACKGROUND

Ray Herrington filed a complaint in this Court on November 15, 2010 alleging the following:

That on September 29, 2010, while traveling south on Gallatin Street in Jackson, Mississippi, he

approached the intersection of Gallatin and West Street where he was met by Defendant Daniel

Buford McFayden,[1] who was traveling in an opposite direction on Gallatin Street.  As Herrington

made a right turn, McFayden turned in front of him causing a collision. McFayden, Herrington

contends,  was an agent, servant and/or employee of Royal Freight and was acting within the course

and scope of his employment.  Complaint [Docket No. 1].[2]

---

[1] Herrington sued "Daniel Buford" but his full name is Daniel Buford McFayden.

[2] In its proposed Answer, Royal Freight admits that "McFayden was operating a tractor-trailer under the operating authority of Royal Freight, and that Royal Freight would be liable for any negligence committed by McFayden which caused or contributed to the subject motor vehicle accident." [Docket No. 21-1] at ¶ 9.

As a result of the accident, Herrington alleges various claims including, negligence, negligent hiring, retention, supervision and control, gross negligence, and imputed negligence through the doctrine of respondeat superior.  [Docket No. 1], at ¶¶ 12-20.  He demands compensatory and punitive damages greater than $75,000 for the injuries he sustained.  Jurisdiction in this Court, therefore, is proper.[3]

Since the filing of this action, however, Defendant Royal Freight failed to timely respond.  Now, the parties assert the following additional facts:  On the date of the accident, Royal Freight notified its insurance carrier, Vanliner Insurance Company, of the accident.  Amended Motion to Set Aside Entry of Default and Default Judgment [Docket No. 18], at Exhibit E, ¶ 4.  The following day, Vanliner, through its Senior Claims Examiner, Patrick Cowden, assigned the claim to Gina Manning at Phillips & Associates in Jackson, Mississippi for investigating and adjusting.  *Id*. at ¶ 5.  Manning provided Cowden with periodic updates as she adjusted the claim.  In the early stage of adjusting the claim, Manning contacted David Crawley, the attorney for Herrington, to request permission to take a recorded statement from Herrington.  *Id*. at Exhibit F, at ¶ 3.  In response, on October 11, 2010, Manning received a letter from the law offices of Sweet & Associates advising that the firm was representing Herrington, not Crawley.  *Id*. at ¶ 7.

 Subsequently, Manning had multiple conversations with attorney Dennis Sweet concerning the claim, including requesting authorization to take a recorded statement from Herrington.  Sweet, however, advised that Herrington would be allowed to give a statement only  "if the driver of the

---

[3]Pursuant to Title 28, Section 1332(a), district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs, and is between citizens of different states.  In the Complaint, Plaintiff alleges that he is a citizen of Hinds County while Buford is an adult resident citizen of Wyoming and Royal Freight is a foreign corporation with its principal place of business in Pharr, Texas. [Docket No. 1], at ¶¶ 3-5.

Royal Freight truck would be made available." *Id*. at ¶ 8. Manning also requested a copy of Herrington's medical records, which were never provided to her. In talking with Sweet, Manning contends that Sweet advised her that he was "more than likely" going to file suit, but he would be open to negotiations until the trial date. *Id*. at ¶ 10. At no time during their conversations, however, did Sweet inform Manning that suit was filed; that Royal Freight had been served and that Royal Freight was in default.

In fact, on November 15, 2010, Herrington had filed the instant lawsuit. Royal Freight was served with process through its owner, president and registered agent, Bill Head, by Certified Mail Return Receipt Requested Restricted Delivery, pursuant to Federal Rules of Civil Procedure Rules 4(h)(1)(A) and Rule 4(h)(1)(B) and Mississippi Rules of Civil Procedure 4(c)(5) on December 6, 2010. [Docket No. 3].[4] It is not clear from the affidavits, if the summons and complaint actually ever passed through Head's hands. In line with the company's mail procedures, however, the documents, went to the appropriate person, Sheri Head, Royal Freight's Account Receivable Manager, who "handle[d] all incoming mail at Royal Freight." [Docket No. 18-3], at ¶ 4. According to Royal Freight's mail handling procedures, once Head received documents appearing to be related to legal proceedings, she scanned them and emailed them to Royal Freight's safety department and to David Girault, the company's Chief Financial Officer and General Counsel. *Id*. at ¶ 4. As General Counsel, Girault was "responsible for handling all legal matters involving the company." *Id*. See also Affidavit of David Girault [Docket No. 18-4], at ¶ 4.

Pursuant to Royal Freight's mail handling procedures, Girault received a scanned copy of

---

[4]Actually, the summons and complaint were sent via restricted delivery to Head, but he did not sign for them. Royal Freight's accounts payable manager, however, signed for and received the documents. [Docket No. 18-1], at ¶ 4. *See also* [Docket No. 18-4], at ¶ 5. And, Royal Freight does not contend that service was improper.

the documents and an original set of the documents were placed on his desk for review. [Docket No. 18-3], at ¶ 4.  Girault, in turn, directed that Monica Morales, Royal Freight's Safety Assistant, fax a copy of the documents to Patrick Cowden, Senior Claims Examiner at Vanliner Insurance Company, "so that defense counsel could be retained and responsive pleadings filed." [Docket No. 18-4], at ¶6.  However, Cowden never received from Royal Freight the "fax or any indication that suit had been filed." [Docket No. 18-5], at ¶ 7.  Thus, Cowden took no steps to obtain counsel to respond to the complaint.  Moreover, as Manning was never advised that suit had been filed or that Royal Freight was in default, her updates to Cowden contained no information regarding the filing of a lawsuit or Royal Freight's apparent default.

Although Royal Freight's answer was due on December 28, 2010, s*ee* Fed R.Civ.P.12 (a), it failed to timely answer or otherwise respond.  [Docket No. 23-1].  More than sixty days after the answer was due, on March 1, 2011, Herrington moved for entry of default and the clerk granted the same on March 3, 2011.   More than a month later, the Court held a hearing on the Motion for Default Judgment on April 19, 2011.  Royal Freight still had not appeared.[5]  On April 26, 2011, the Court entered the order granting a default judgment in favor of Herrington on the issue of liability only.  The Court found that Royal Freight "had actual knowledge of the lawsuit as evidenced by the delivery and receipt of the Plaintiff's Complaint and Summons [Docket No. 3] and counsel's certificate of service of Plaintiff's Motion for Entry of Default [Docket No. 9]." [Docket No. 13], at ¶2.  The Court also allowed Herrington an additional thirty days in which to serve Defendant

---

[5]In Girault's affidavit he avers that he could not recall having seen or been provided with a copy of the Plaintiff's Application for Clerk's Entry of Default or the Attorney's Declaration in support of Application for Entry of Default. [Docket No. 18-4], at ¶ 7.  Sheri Head's recollection was the same. [Docket No. 18-3], at ¶ 5.  Bill Head, however, avers that he did not receive these documents. [Docket No. 18-1], at ¶ 6.   But, the certificate of service filed by counsel for Herrington certifies that Head was served via U.S. Mail. [Docket No. 9] at 2.

Daniel Buford [McFayden]. [Text Order Entry on April 19, 2011]. In addition, the Court set a hearing on damages for June 30, 2011 and further ordered counsel for Herrington to provide a copy of the order and notice of hearing to "all defendants as well as Gina Manning, Adjuster of Phillips & Associates, Inc. at their last known address, the address where they can be found, or the best address available to Plaintiff." [Docket No. 13], at 4. Herrington complied with the Court's order. Plaintiff also filed a Notice of Hearing and served it on Bill Head and David Girault. [Docket No. 14]. The very next day counsel for Royal Freight entered their appearance [Docket No. 15].

On April 29, 2011, after receiving the order of default, pursuant to Fed.R.Civ.P. 55(c), Royal Freight filed its Motion to Set Aside Entry of Default and Default Judgment. [Docket No. 16]. Royal Freight also sought additional time in which to file a supporting memorandum. Royal Freight filed additional pleadings including a second motion, supporting memoranda and affidavits seeking to set aside the default judgment to which Herrington responded. [Docket No. 21]. Royal Freight then filed a second Amended Motion and with this pleading it attached its proposed Answer and Affirmative Defenses. [Docket No. 23]. On June 30, 2011 instead of having the hearing on damages, the Court held arguments on the motions regarding setting aside the default judgment. At the conclusion of the hearing, the Court allowed the parties to submit supplemental authorities. Having considered all arguments and submissions, for the reasons below, the Court is ready to rule.

<u>**ANALYSIS**</u>

Royal Freight desires that this Court exercise its discretion and set-aside the clerk's entry of default and the default judgment that this Court has entered. Default judgments "are generally disfavored in law and thus should not be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement." *Watkins Ludlam Winter & Stennis, P.A. v. Dynasteel*

*Corp.,* 2011 WL 976592 *2(S.D. Miss. March 17, 2011)(internal citations omitted).  Pursuant to Fed.R.Civ.P.55(c), a court may set aside an entry of default for good cause.  In establishing good cause, the court considers various factors including: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented. *Watkins Ludlam, supra,* at *2, *citing Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).  The Court, however, is not confined to these factors.  *Effjohn Int'l Cruise Holding, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).   Not only is the Court not confined to these factors, but it does not even have to consider all  of them.  *In re: Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992).  "The ultimate inquiry remains whether the defendant shows 'good cause' to set aside the default." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).

Although Royal Freight did not specifically invoke Fed.R.Civ.P. Rule 60 as a basis to set aside the Court's order, *see*, [Docket Nos. 16, 18, 21 and 23], the Court will construe his motion as a request under that rule as well.  The same factors as mentioned above to set aside the clerk's entry of default guide this Court when it considers a request to set aside a default judgment,  and the Court has the same discretion concerning which of the factors, if any, it will consider.  Whether "good cause" has been established remains the paramount concern.  *CJC Holdings*, 979 F.2d at 64.  Where there is a willful or intentional failure to respond, the inquiry ends, and the Court need not make any further findings in refusing  a party's request to set aside a default.  *See Block Corp. v. Nunez*, 2009 WL 198366, *3 (N.D. Miss. 2009), *citing Dierschke,* 975 F.2d at 184.  Moreover, "[a] willful default is an 'intentional failure' to respond to litigation."  *Economy Stone Midstream Fuel, LLC v. M/V A.M. Thompson*, 2009 WL 4728695, at *2 (N.D. Miss 2009).  When a party has actual notice of a claim for which a response has been demanded and fails to answer the claim, the failure may be

deemed willful. *CJC Holdings*, 979 F.2d at 64; *Anderson v. Iceland Seafood Corp.*, 1996 WL
46554, *3 (5th Cir. 1996).

> **Royal Freight's failure to respond is willful, and it  has not demonstrated good cause
> to set aside the default judgment.**

Several cases, some of which were relied upon by Plaintiff, are instructive to the Court in
reaching its decision.  In *Dierschke v. O'Cheskey*, 975 F.2d 181 (5th Cir. 1992), for example, the
court affirmed the district court's denial of a defendant's request to set aside the entry of default
judgment.  *Id*. at 182.  There the bankruptcy trustee sued Defendant Dierschke in an adversary
proceeding alleging that Dierschke initiated several fraudulent transfers between his parents prior
to filing the bankruptcy action.  Dierschke *and his attorney* were served with a copy of the Summons
and Complaint.  After two months,  no answer or responsive pleading had been filed so plaintiffs
requested entry of default.  *Id*. at 183.  After the clerk entered the default, a hearing was scheduled
and only then did Dierschke begin to file an array of motions including a motion to set aside default.
At the hearing, the court found that Dierschke's failure to respond was willful and denied his motion
to set aside.  *Id*.  On appeal, the Fifth Circuit determined that the entry of default was proper, and the
only issue before it was whether the district court abused its discretion in refusing to set aside the
default.  *Id*.  In weaving through the various factors which could establish good cause for setting
aside the default, the court noted that where there is a finding of intentional failure to respond, there
need be no other finding.  *Id*. at 184.  A  "[w]illful failure alone," the court noted, " may constitute
sufficient cause for the court to deny [a motion to set aside.]."  *Id*. at 184-85.[6]

---

[6]The trial court rejected the plaintiff's averments in his affidavit that he was unaware of the documents with which he
had been served; that he was confused and because of the confusion, he did not inform his counsel or instruct him to file
an answer.  *In Re Dirschke v. O'Ocheskey*, 1992 WL 333904, at *3 (N.D. Tex. 1992).  The trial court noted that in
addition to having been served with the summons, which instructed him of his obligations upon receipt of the same,
Dierschke's attorney also received a copy of the Complaint. *Id*.  Dierschke simply ignored the documents.

Similarly, in *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933 (5th Cir. 1999), the Fifth Circuit also affirmed the district court's denial of defendant's motion to set aside the default judgment.

In that case Rogers sued the provider of his long term disability insurance, Hartford Life and Accident Insurance Company, and his former employer's benefit plan, Entergy Corporation Companies Benefits Plus Long Term Disability Plan, when plaintiff was denied long-term disability benefits. Rogers served the Plan's administrator in New Orleans with a copy of the Summons and Complaint, and then he served Hartford's agent for service of process in Mississippi, who executed a waiver of service of process. *Id*. at 935. Neither defendant timely answered, which prompted Rogers to seek entry of default. Thereafter, the trial court held a hearing and entered default judgment against the insurance company and the benefits plan. More than a month later, the defendants filed motions to set aside the default judgment, but the district court denied the motions.

To support its evidence of excusable neglect before the district court, the Hartford defendant asserted that Hartford's agent for service of process, Elizabeth Coleman, had been served with the summons and Complaint. Coleman then forwarded the documents to Hartford via Airborne Express, but Hartford proved that it never received the delivery. *Id*. at 938. It was Hartford's contention that because Airborne Express failed to deliver the documents, no responsive pleading was due. *Id*. Latching onto other equitable considerations, including its contention that it had a meritorious defense and that the plaintiff would suffer no prejudice if the case were allowed to proceed to trial on the merits, Hartford urged the district court to set-aside the judgment. *Id*. The district court, however, declined the request.

On appeal, the Hartford defendant argued that the trial court abused its discretion.

Specifically, it contended the equitable considerations coupled with the evidence it had presented established excusable neglect; thus district court had a strong basis to set aside the default judgment and it should have set aside the judgment. *Id*.

Unconvinced, the Fifth Circuit was critical of the lack of procedural safeguards that Hartford had in place for checking up on process, including failing to make sure that the response reached its destination and that certain action was being taken in light of the receipt of the process. *Id*. at 939. Additionally, the court of appeals determined that Hartford had actual notice of the summons and Complaint because Coleman contacted Hartford's Senior Claims Examiner and informed her that Coleman had in fact been served with the documents, and that she would forward them to Hartford immediately. *Id*. at 939. The court further noted that once Hartford was aware of the lawsuit, it had the responsibility to ensure that "'process . . .in fact reached its destination and that action [was] being taken.'" *Id*. (quoting *Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987)). In essence, because Hartford's lack of procedural safeguards in conducting follow-up was a partial cause of its failure to respond, the court concluded that the neglect was not excusable.

Likewise, the Fifth Circuit also determined that the failures of the second defendant, Entergy Benefits Plan, did not constitute excusable neglect and that the district court did not clearly err in refusing to set aside the default judgment against it. Entergy argued to the court of appeals, to no avail, that it failed to timely respond to the suit because while it had a process in place to ensure that legal process was forwarded to the appropriate person, the summons and complaint were mistaken for an inner office appellate file. And, thus, no responsive pleading was filed on its behalf. Entergy acknowledged that it was careless, but it contended that its carelessness did not rise to the level of culpability or willfulness which prevented the district court from setting aside the default judgment.

*Rogers*, 167 F.3d at 943.  However, the court of appeals rejected this argument and noted that the district court had properly focused on the *culpability* of the defendant and not on whether it acted wilfully.  *Id.* (Emphasis added).  Therefore, because the defendant was in fact culpable, the trial court did not abuse its discretion in refusing to grant the motion to set aside the default judgment. *Id.*, *citing CJC Holdings*, 979 F.2d at 64; *Ben Sager v. Chem. Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977)(noting that "neither ignorance nor carelessness on the part of a litigant or his attorney provide for ground for relief under Rule 60(b)(1)); and *Insurance Co. of North America v. S/S Hellnic Challenger*, 88 F.R.D. 545, 548 (S.D.N.Y. 1980)("The adjuster's loss of the summons and the complaint is a mistake in the ordinary course of the internal operations of defendant's business and thus does not merit remedial relief pursuant to Rule 60(b)(1).").

The case *sub judice* bears resemblance to the cases mentioned above.  Royal Freight has articulated no argument or presented any evidence which justifies setting aside the entry of default or the default judgment.  The primary fact which drives this Court to this conclusion is that Royal Freight's in-house counsel, the person responsible for its legal affairs, actually received the summons and complaint, yet he did nothing other than give to his secretary to fax it to the company's insurance.  He certainly knew that an answer or other responsive pleading must be filed, but Girault never followed-up to ensure that action was being taken on the company's behalf until after the default judgment had been entered..  Furthermore, while it may be said that Royal Freight maintained an adequate in-take procedure to ensure that legal documents were received, there is nothing in the record which demonstrates that Royal Freight had adequate follow-up procedures in place.  *See Hartford*, 167 F.3d at 939, *citing Air Canada*, 810 F.2d at 1537.  Because Royal Freight's in-house counsel did in fact receive process involving a lawsuit where the company and its employee were

named defendants, and he did nothing to ensure that their interests were being protected , the Court

finds that Royal Freight is no less culpable than the defendants in *Hartford*. This simply is not

acceptable.

Girault did nothing more than have a copy of the documents forwarded to the insurance

company. He placed the original summons and Complaint on his desk where they remained.

Apparently, during the relevant period, he never picked up the documents again. There is no

evidence that he ever called to find out the status of the claim or the lawsuit. He never tried to

determine which attorney or law firm had been hired by the insurance company to defend the claim.

Apparently, he did not find it odd that no insurance company had contacted him or anyone else at

the company to seek information to prepare an answer or other responsive pleading. There is nothing

in the record which demonstrates Girault even contacted or spoke with McFayden to advise him

that an adjuster or attorney should be contacting him as a part of the investigation of the claim or the

lawsuit. Nor did Girault even contact McFayden, Royal Freight's employee who had been sued for

conduct allegedly within the course and scope of his employment, to determine if he had been served

with a summons and copy of the complaint or provide to him certain instructions in case he was

served. Based on the evidence presented, Girault did absolutely nothing for days, weeks and months

even though he was aware of the lawsuit and knew an answer or other responsive pleading had to

be filed. As the person "responsible for handling all legal affairs of the company," Girault failed

Royal Freight. It was his duty to make sure that action was being taken on behalf of the company.

*Hartford*, 167 F.3d at 939.[7]

Finally, the Court rejects Royal Freight's attempts to shift some blame beyond it employees

---

[7] It is also worth noting that other management officials, namely, the Accounts Payable Manager and the Accounts Receivable Manager, had knowledge of the lawsuit. *See* [Docket Nos. 18-1 and 18-3].

and argue that Sweet misled Manning by not informing her that the suit had been filed.  Plaintiff was

under no obligation to advise Manning or anyone else that he had filed his lawsuit.  He did all which

was required of him: he filed the suit; had the summons issued;  and had the summons and a copy

of the Complaint served in conformity with the rules.  There was no evidence that Royal Freight

authorized Manning to receive process on its behalf.   Therefore, any assurances to Manning, even

if they were made, do not persuade this Court that Royal Freight has demonstrated excusable neglect.

Indeed, Girault's failures simply trump everything else, and Royal Freight has failed to convince this

Court that its neglect was excusable.[8]  *See Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.

1975)(where defendants own neglect is at least partially the cause, it must convince the Court that

its neglect was excusable in order to prevail on motion to set aside judgment).

## CONCLUSION

The motions of the defendant to set aside the entry of the default and the default judgment

[Docket Nos. 16, 18, 21, and  23] are hereby DENIED.  Within fourteen days of the entry of this

Order, the parties are instructed to contact the chambers of the Magistrate Judge to obtain a

---

[8]Moreover, Royal Freight has not demonstrated that it has a *meritorious* defense to the action.  Royal Freight's proposed answer consists of general denials and conclusory statements.  Furthermore, Royal Freight offers no sufficient evidence which rebuts Plaintiff's version of events, which establishes Royal Freight's negligence. *See U.S. v. $670,706.55*, 367 Fed.Appx. 532, at *4 (5th Cir. 2010)(conclusory allegation in the motion to set aside are insufficient to establish probability of success on the merits).  Royal Freight has not made a "clear and specific showing...by [a] definite recitation of facts" that it has a valid defense." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 121 (5th Cir. 2008).  *Accord. Enron Oil Corp. v. Diakuhara*, 10 F.3d 90,98 (2nd Cir. 1993)("'defense is measured not by whether there is a likelihood that is will carry the day, but whether the evidence submitted, if proven at trial, would constitute a **complete defense**.'" (emphasis added)(citing 10A Charles A. Wright, Arthur R. Miller, and May Kay Kane, Federal Practice & Procedure: Civil 3d § 2697 (1998)("The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by default."); and *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)("'meritorious defense' in this context is a defense, which, if established at trial, would completely bar plaintiff's recovery.  *See also  Dynasteel*, 2011 WL 976592, at *2 (claiming existence of meritorious defense is far cry from actually offering one); and *Sellers v. Osyka Permian, LLC.*, 263 F.R.D. 372, 378 (S.D. Miss. 2009)(court persuaded that the affidavits presented by defendants provided "definite factual allegations, as opposed to mere legal conclusions, in support of their defense.").  Finally, one commentator has cautioned that those moving to set aside a default should present a "**declaration** regarding the facts supporting the defenses," something which is absent here.  Hittner, Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV, PRO. BEFORE TRIAL–5th CIR. Ed. (The Rutter Group 2011)(emphasis added).

scheduling order so that the parties may conduct discovery pertaining to Plaintiff's claim for damages, and to obtain a trial setting.

So ORDERED and ADJUDGED, this the 23rd day of September, 2011.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE